UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **CHERYL A. FARLEY,** | ) |
| **Plaintiff,** | ) |
| vs. | ) Cause No. 1:13-cv-167-WTL-DKL |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) |
| **Defendant.** | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Cheryl A. Farley requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court now rules as follows.

### I.  PROCEDURAL HISTORY

Farley filed an application for DIB on April 22, 2010, alleging disability beginning December 1, 2009, due to back pain, fibromyalgia, and plantar fasciitis. Farley's application was initially denied on August 18, 2010, and again upon reconsideration on November 15, 2010. Thereafter, Farley requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on October 11, 2011, before ALJ Daniel J. Mages in Indianapolis, Indiana. During the hearing, Robert Barber testified as a vocational expert. On October 28, 2011, the ALJ issued a decision denying Farley's application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on December 4, 2012. This action for judicial review ensued.

## II. EVIDENCE OF RECORD

The specifics of Farley's medical history are aptly set forth in the parties' briefs and need not be recited here. Relevant facts are also noted in the discussion section below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while "he is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1177.

## IV.  THE ALJ'S DECISION

At step one, the ALJ found that Farley had not engaged in substantial gainful activity since December 1, 2009, her alleged onset date. At step two, the ALJ concluded that Farley suffered from the following severe impairments: degenerative disc disease, a tear in her right medial meniscus, fibromyalgia, plantar fasciitis, irritable bowel syndrome, obesity, carpal tunnel syndrome, depression, and a pain disorder. At step three, the ALJ determined that Farley's severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Farley had the residual functional capacity ("RFC") to perform

> a range of light work . . . defined as follows: sitting up to one hour at a time and four hours during an eight-hour workday; standing and walking up to thirty minutes at a time and four hours during an eight-hour workday; lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropers or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fingering, handling and reaching but no forceful gripping; no vibrating tools; no more than moderate

exposure to extreme cold, wetness or humidity; simple and repetitive tasks akin to unskilled work with the ability to attend, concentrate and persist for two hours at a time; and no more than superficial interaction with the general public, coworkers, or supervisors.

Tr. at 23. Given this RFC, and taking into account Farley's age, education, and work experience, the ALJ determined at step five that Farley could perform jobs existing in significant numbers in the national economy, those being an information clerk, a cafeteria cashier, and a parking garage attendant. Accordingly, the ALJ concluded that Farley was not disabled as defined by the Act from December 1, 2009, through the date of his decision.

## V. DISCUSSION

Farley advances several objections to the ALJ's decision; each is addressed below.

### A. RFC Assessment

Farley argues that the ALJ assessed an RFC that is not supported by substantial evidence. Specifically, Farley maintains that "the ALJ erred by impermissibly playing doctor and arriving at his own medical conclusions without seeking medical testimony, ignoring entire lines of evidence concerning the claimant's physical impairments, failing to articulate whether the claimant needed a cane for standing, and improperly dismissing the claimant's testimony." Farley's Br. at 13-14. The Court agrees that the ALJ's RFC assessment was insufficient.

*1. Playing Doctor*

First, Farley argues that "the ALJ in [her] case impermissibly played doctor by concluding [that she] could stand or walk for four hours each day without an assistive device, lift or carry twenty pounds occasionally, and frequently handle, or engage in gross grasping." Farley's Br. at 15. In short, Farley maintains that the objective medical evidence does not support such an RFC. The ALJ, however, did not play doctor as Farley alleges.

The medical evidence in this case is fairly straightforward. In January 2010, Farley was diagnosed with fibromyalgia and osteoarthritis. Several months later she was diagnosed with depression.

On May 10, 2010, Farley underwent a psychiatric evaluation. She was diagnosed as having an adjustment disorder with depressed mood and anxiety. The following month, she underwent a consultative psychological evaluation. The psychologist concluded that Farley suffers from major depressive disorder and a pain disorder associated with both psychological factors and a general medical condition.

On June 21, 2010, Farley presented for a consultative physical examination. The consulting doctor diagnosed Farley with myalgia and myositis, carpal tunnel syndrome, esophageal reflux, depressive disorder, rosacea, and plantar fascial fibromatosis. He noted that Farley underwent surgery for carpal tunnel syndrome in the past and had reduced grip strength in both hands (two out of five).

Farley continued to treat with her primary care physicians, and on July 20, 2010, an x-ray of Farley's spine revealed mild degenerative spondylosis, grade 1 degenerative anterolisthesis at the L4-L5 level, and moderately severe facet osteoarthritis at the L4-L5 and L5-S1 levels. Additionally, according to Farley, she injured her right knee during the x-ray.

On August 2, 2010, a reviewing physician completed a physical RFC assessment. He opined that Farley could lift and/or carry 20 pounds occasionally and ten pounds frequently, stand, walk, or sit for six hours in an eight hour day, engage in constant handling, fingering, and feeling bilaterally, and only perform occasional overhead reaching with the left upper extremity.

Thereafter, on October 13, 2010, an MRI of Farley's right knee indicated a "small oblique undersurface tear of body and posterior horn of medial meniscus" and an "oblique
5

undersurface tear of the posterior horn and body of the lateral meniscus." *Id.* at 278. In November 2010, Farley was diagnosed with plantar fasciitis.

After Farley continued to experience knee pain, she underwent knee surgery on March 11, 2011. The surgeon performed a partial medial and lateral meniscectomy, chondroplasty of the patella, and plical excision. After the surgery, Farley began using a cane to ambulate, although it was not prescribed by her physician. She was also referred to physical therapy, but was released on May 12, 2011 after reaching maximum rehabilitation potential. She attempted another course of physical therapy in August 2011. The outcome of the second course of physical therapy is unknown.

In September 2011, Farley continued to complain of knee pain, and she regularly reported that her knee was "giving out." The doctor concluded that "the giving out is more due to a pain-related give-way." *Id.* at 369. To help, he provided her with a hinged knee brace. Farley also continued to use her cane.

Based in part on the foregoing medical evidence, the ALJ concluded that Farley could sit for up to one hour at a time and four hours during an eight-hour workday, stand and walk for up to thirty minutes at a time and four hours during an eight-hour workday, lift, carry, push and pull twenty pounds occasionally and ten pounds frequently, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and frequently finger, handle and reach. Indeed, the ALJ's RFC determination was more limited than the RFC suggested by the reviewing physician. Based on the foregoing medical evidence, the ALJ did not "impermissibly play doctor."[1]

---

[1] With this finding, however, the Court does not mean to imply that the RFC assessment was correct. Rather, the Court simply notes that the ALJ did not overstep his bounds with regard to the medical evidence.

### 2. Ignored Evidence

Farley also argues that the ALJ ignored critical evidence. An ALJ, however, need not discuss every piece of evidence in his disability decision. *See Diaz v. Chater,* 55 F.3d 300, 307–08 (7th Cir. 1995). Rather, the ALJ must simply "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176. In this case, the ALJ failed to discuss several important pieces of information.

In particular, the ALJ failed to discuss the medical records related to Farley's knee injury, her resulting surgery, and the post-surgery doctor notes. Thus, the Court is unable to determine whether the ALJ considered Farley's serious knee problem in relation to his RFC assessment. As a result, this matter must be remanded to the ALJ for clarification. On remand, the ALJ shall discuss the medical records related to Farley's knee injury and the impact they have, if any, on the RFC.

The ALJ is also instructed to discuss the specific medical records related to Farley's manipulative abilities and their effect on the RFC, if any. The ALJ recognized that Farley's grip strength was only two out of five, yet concluded that she had no significant manipulative deficiencies and could lift twenty pounds occasionally and ten pounds frequently. On remand, the ALJ should reconcile this seemingly inapposite finding.

### 3. Farley's Cane

Farley further argues that "[t]he ALJ erred by failing to articulate whether the claimant needed a cane for standing and including such limitations in the assessed RFC." Farley's Br. at 19. The ALJ noted several times in his decision that Farley used a cane, but that the cane was not prescribed by a physician and she had the "ability to ambulate without the use of an assistive device." Tr. at 25. Farley, however, testified as follows during the hearing: "I keep my cane next

to me just in case you know because my knee has given out on me standing up by the sink. So I don't really trust [being] in the kitchen without my cane." *Id.* at 52. The ALJ failed to discuss this particular statement and Farley's claim that she requires a cane for standing. As such, the Court is unable to determine whether the ALJ considered this statement and alleged limitation in relation to the RFC. On remand, the ALJ is instructed to discuss Farley's claim and its impact on the RFC, if any.

### 4. Credibility Determination

Next, Farley argues that the ALJ's credibility determination was improper. Farley focuses on many of the issues already discussed above (e.g., Farley's claims regarding her cane and the "ignored" evidence). As a reminder, on remand, the ALJ should address Farley's use of a cane while standing as well as the medical records related to Farley's knee injury and her manipulative abilities. If these issues effect the ALJ's credibility determination, he should reconsider his credibility determination.[2]

## B. Hypothetical

Farley also argues that the ALJ failed to include her limitations with regard to concentration, persistence, or pace in the hypothetical given to the vocational expert. Thus, the hypothetical was based on incomplete medical evidence. The Court agrees that the hypothetical was insufficient.

"When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. . . . More specifically, the question must account for documented limitations of 'concentration, persistence, or pace.'"

---

[2] The Court also notes that the ALJ should not use boilerplate language which courts have repeatedly frowned upon. *See, e.g.*, *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (quoting *Bjornson*, 671 F.3d at 645 and citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)).

8

*Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (citations omitted); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace.") (citation omitted). An ALJ, however, is not specifically required to use the terms concentration, persistence and pace. *O'Connor-Spinner*, 627 F.3d at 619. Rather, an ALJ may use "alternative phrasing" or include the underlying symptoms responsible for the limitations in the hypothetical. *Id.* at 619-20. For example, the Seventh Circuit "upheld a hypothetical that restricted the claimant to low-stress, low-production work when the claimant's difficulties with concentration, persistence and pace arose from stress-induced headaches, frustration and anger." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007)).

In this case, the ALJ concluded that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." Tr. at 22. The ALJ also posed the following hypothetical to the vocational expert:

> If we were to assume a hypothetical individual the same age, education and work experience as the claimant who could perform a range of work sitting up to one hour at a time and four hours during an eight-hour workday. Standing and walking up to 30 minutes at a time and four hours during an eight-hour workday.
>
> Lifting, carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently. Occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. No climbing ladders, ropes or scaffolds. No work around dangerous moving machinery or unprotected heights.
>
> Frequent fingering, handling and reaching but no forceful gripping, no vibrating tools. No more than moderate exposure to extreme cold, to wetness or humidity, and no more than superficial interaction with the general public, coworkers or supervisors.

*Id.* at 59-60.

This hypothetical, however, does not account for any specific limitations in concentration, persistence or pace. On remand, the ALJ shall identify the specific limitations

9

experienced by Farley related to concentration, persistence and pace, and include them in the hypothetical to the vocational expert. *See O'Connor-Spinner*, 627 F.3d at 620-21 ("[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.").

### C. Step Five Determination

Lastly, Farley argues that the ALJ was required but failed to ensure that the vocational expert's conclusions were reliable before adopting them to support his Step Five determination. The Court finds, however, that the ALJ was entitled to rely on the vocational expert's opinion. (Of course, a new hypothetical is required on remand. Thus, this finding is limited only to the insufficient hypothetical noted above.)

During the hearing, the following exchange took place between the vocational expert ("VE") and Farley's counsel:

| | |
|---|---|
| Counsel: | Sir, you identified the three jobs that [Farley] could do for a person who is limited to four hours standing total [those being an information clerk, a cafeteria cashier, and a parking garage attendant]. Is that because of sit/stand options? The reason I ask is, if those are classified as light work, I thought that that meant you were standing or walking for six hours in an eight-hour day. Could you clarify what you mean by it? |
| VE: | Yes. De facto. In actuality, those three jobs that I identified can sit behind a counter or at a cash register and sit on a stool pretty much at [will]. |
| Counsel: | Okay, What is the basis of that opinion? |
| VE | 30 years experience placing people with disabilities and conducting on-site evaluations. |
| Counsel: | So you have performed on-site evaluations? |
| VE: | Yes. Thousands. |

| | | |
|---|---|---|
| Counsel: | | Do you have any documentation of those studies that you're finding that these jobs require these types of things? |
| VE: | | What exactly do you mean by documentation? |
| Counsel: | | I guess what I mean is, are you basing this solely on your opinion or is there some type of study or some sort of document that I can review that you're basing the numbers of jobs on? |
| VE: | | Well, also – |
| Counsel: | | For these types of sit/stand option jobs. |
| VE: | | Also numerous peer reviews. |
| Counsel: | | Could you tell me what some of those are? |
| VE: | | Such as? I'm not quite sure. |
| Counsel: | | Okay. Let me clarify. I guess what I'm – |
| VE: | | Well, there's an SSA VE list, sir. Hundreds and hundreds of VE's are on that, and we bring up such topics. And that's what I meant by peer reviews. |

Tr. at 62-63. In response to this discussion, the ALJ stated as follows in his decision:

> The vocational expert testified his opinion with regard to the existence and number of jobs given the restrictions for four hours of sitting and four hours of standing/walking is based upon professional experience in client placement and the results of vocational studies. He did not testify this amounts to an accommodation [e.g., sit/stand], but testified these jobs can pretty much be performed sitting or standing at will, and that is how he has seen them performed in the competitive work setting.

*Id.* at 27.

> According to case law,
>
> when no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the *Dictionary's*—for the *Dictionary*, after all, just records other unexplained conclusions and is not even subject to cross-examination. If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable.

11

*Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Clearly, Farley's counsel attempted to challenge the vocational expert's opinion during the hearing. He did not, however, (and has not now) identified any articles, studies, or evidence that discredits the vocational expert's testimony. Additionally, the vocational expert testified that his opinion was based on thirty years of personal experience and peer review discussions, and the ALJ was satisfied with this information. *See* Tr. at 27. Based on the foregoing, and the very nature of the opinion, the ALJ was not required to perform any further inquiry as to the reliability of the vocational expert's testimony.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED: 3/24/14

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.